UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOVON JONES, | : | |
| Petitioner | : | CIVIL ACTION NO. 3:16-1351 |
| v. | : | (JUDGE MANNION) |
| COMM. OF PA, *et al*., | : | |
| Respondents | : | |

**MEMORANDUM**

Petitioner, Jovon Jones, an inmate confined in the Forest State Correctional Institution, Marienville, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He challenges his conviction and sentence imposed in the Court of Common Pleas of York County. Id. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.

I.    **Factual and Procedural Background**

The facts underlying Jones' conviction, extracted from the Pennsylvania Superior Court's June 5, 2015 Memorandum Opinion,

affirming the trial Court's denial of Jones' Post-Conviction Relief Act petition, are as follows:

> The underlying facts of this matter involve the killing of Alesia Martin, whose body was discovered in her home on May 16, 2011. Appellant lived in a row home next door to the victim. Family members became concerned when they were unable to contact Ms. Martin. One of her family members, Bryce Bennett, entered into her home by going through a crawl space between Appellant's attic and the victim's residence. Appellant allowed Mr. Bennet to use the crawl space but did not accompany him. Mr. Bennett found the victim in a state of undress in her bedroom with blood on the walls. Her bed had been stripped of the bedding and a large bloodstain was on the bed. Mr. Bennett opened the front door and telephoned 911 with Appellant's cell phone but was too distraught to speak.
>
> Appellant volunteered for an interview with police on May 18, 2011. Appellant initially indicated that, after Mr. Bennett opened the door to the victim's home, Appellant went upstairs into the victim's rooms. According to him, the 911 dispatcher asked him to touch the body and see if it was cold. However, two other family members of the victim who were at the house when the body was discovered contacted police after seeing Appellant provide media outlets with graphic descriptions of the scene. These family members insisted that Appellant had not entered the victim's bedroom. Mr. Bennett also confirmed that Appellant had not gone into the bedroom, as did several other witnesses who had been present.
>
> Based on this information, police secured a search warrant for Appellant's home, and requested Appellant to come in for a second interview. Appellant did volunteer to be interviewed and he was given *Miranda* warnings. The interview was both audio and video recorded. Police interviewed Appellant from 10:51 p.m. until 5:31 a.m., with various breaks in between. Ultimately, Appellant admitted to stealing the victim's cell phone and implicated himself in the killing. Police then arrested Appellant. After a preliminary hearing, Appellant's charges were amended

to include first-degree murder, third-degree murder, burglary, theft by unlawful taking, abuse of corpse, tampering with evidence, and unsworn falsification.

Appellant litigated a suppression motion and proceeded to trial. The Commonwealth and defense counsel agreed that portions of Appellant's May 19-20 video interview would be redacted. Defense counsel notified the prosecution via email of the portions of the video he believed should be redacted. The parties agreed that a portion of the video that referenced other burglary allegations would not be played for the jury. However, during the trial, the Commonwealth played that section before stopping the video. The section of the video where Appellant admitted to being inside the house had not yet been played. Defense counsel requested a mistrial, which the trial court granted.

Following the mistrial, the Commonwealth obtained additional DNA evidence implicating Appellant. The parties entered into plea negotiations. The Commonwealth sought a plea to third-degree murder and the other charges in exchange for a twenty-five to fifty year sentence. Although represented by counsel, Appellant filed with the court a *pro se* motion to dismiss based on double jeopardy grounds. Defense counsel received that motion but did not pursue it. Thereafter, Appellant entered a *nolo contender* plea to third-degree murder, theft by unlawful taking, abuse of corpse, tampering with evidence, and unsworn falsification in exchange for a sentence of twenty-five to fifty years. The Court imposed sentence on May 6, 2014.

Appellant, acting *pro se*, wrote to the court complaining of counsel's representation and requested new counsel. That motion was docketed on May 21, 2014. A similar motion was docketed on June 4, 2014. However, prior to that, the court, on May 30, 2014 appointed new counsel. Counsel did not file a directed appeal but submitted a petition for post-conviction relief. Therein, Appellant asserted that counsel rendered ineffective assistance by not moving to dismiss the charges on double jeopardy grounds, which improperly induced him to enter the guilty plea. The PCRA court conducted an evidentiary hearing on July 14, 2014.

> The PCRA court denied Appellant's petition, and this timely appeal ensued. The court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the PCRA court authored its Rule 1925(a) decision. The matter is now ready for this Court's review. Appellant presents one issue for our consideration.
>
>> 1. Whether the PCRA court erred in denying the Petition for Post-Conviction Relief which argued that the Appellant's trial counsel rendered constitutionally ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and under Article 1, Section 9 of the Pennsylvania Constitution, by improperly inducing the Appellant into entered a no contest plea on May 6, 2014 to the charges of Theft by Unlawful Taking, Murder of the Third Degree, Abuse of Corpse, Tampering with Physical Evidence, and Unsworn Falsification, by failing to move to dismiss the charges because of a violation of the Double Jeopardy clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and under Article 1, Section 10 of the Pennsylvania Constitution, following the mistrial declaration at the conclusion of his June 2013 jury trial.

(Doc. 19-3 at 91-95, Memorandum Opinion).

By Memorandum Opinion dated June 5, 2015, the Pennsylvania Superior Court affirmed the PCRA Court's Order denying Jones' PCRA petition, finding that Jones' claim of ineffective assistance of counsel lacked arguable merit. Id.

On June 11, 2015, Petitioner filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, (Doc. 19-3 at 103-138). By Order dated

December 31, 2015, the Pennsylvania Supreme Court denied Jones' Petition for Allowance of Appeal. Id. at 139.

After filing a second PCRA petition, which was dismissed as untimely on June, 6, 2016, (Doc. 19-3 at 191), Petitioner filed the instant petition for writ of habeas corpus on July 1, 2016, in which he raises the following issue for review:

> The Court erred in denying the Petitioner for post-conviction relief which argued appellant's trial attorney failed to move to dismiss charges for violation of Double Jeopardy clause.

(Doc. 1, petition).

## II.  **Legal Standard of Review**

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). 28 U.S.C. §2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States
>
> ....
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall

>   not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994) (citations omitted).

Jones' case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

### III.  Discussion

Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," Greene v. Fisher, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen, 563 U.S. at 181

(internal quotation marks and citation omitted). The burden is on petitioner to prove entitlement to the writ. Id.

Under 28 U.S.C. §2254(d)(1), a decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The test for §2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)). "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under §2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75–76 (quoting

Williams, 529 U.S. at 411). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75.

The test for §2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," §2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338–339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' ") (quoting §2254(e)(1)) (citing Miller–El v. Dretke, 545 U.S. 231, 240, (2005)). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen, 563 U.S at 185.

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1).


Petitioner claims that his federal constitutional rights were violated due to an alleged error in the Pennsylvania Court ruling that denied Jones' PCRA petition, in which Petitioner alleged that counsel was ineffective for failing to move for dismissal of Petitioner's criminal case on the grounds of Double Jeopardy. (Doc. 1).

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." See id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in the performance

prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. See Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in Strickland "qualifies as 'clearly established Federal law' " for purposes of the AEDPA. See Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (quoting Williams v. Taylor, 529 U.S. 362, 391 (2000)). Therefore, under §2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of Strickland or are based on an unreasonable determination of the facts. See Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, see Commonwealth v Pierce,

515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to Strickland, see Jacobs, 395 F.3d at 107 n.9.

The Double Jeopardy Clause forbids "any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause "protects a criminal defendant from repeated prosecutions for the same offense." Oregon v. Kennedy, 456 U.S. 667, 671 (1982). "The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." Id. at 672.

In Kennedy, the Oregon Court of Appeals found the Double Jeopardy Clause barred a retrial because the prosecutor's misconduct in asking an expert witness if the reason the witness had never done business with the defendant was "because he is a crook" amounted to "overreaching," even though the trial court had determined it was not the prosecutor's intention to cause a mistrial. Kennedy, 456 U.S. at 669. The Supreme Court held, where the defendant moves for a mistrial, the Double Jeopardy Clause bars retrial only where the prosecutor intended to provoke the defendant into seeking a mistrial:

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double

> Jeopardy Clause ... Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

Kennedy, 456 U.S. at 675-76.

The Supreme Court held in Kennedy where the Oregon courts found "the prosecutorial conduct culminating in the termination of the first trial ... was not so intended by the prosecutor, that [was] the end of the matter for purposes of the Double Jeopardy Clause[.]" Id. at 679.

The Pennsylvania Superior Court affirmed the PCRA Court's denial of Petitioner's claim, reasoning:

> Appellant argues that, based on **Commonwealth v. Smith**, 615 A.2d 321 (Pa. 1992), and **Commonwealth v. Wood**, 803 A.2d 217 (Pa. Super. 2002), the Commonwealth's actions herein should have precluded a retrial. In **Smith**, the defendant was convicted of murdering a woman and her children but was granted a new trial based upon the erroneous admission of hearsay. After the award of the new trial, Smith discovered that the Commonwealth deliberately withheld material exculpatory evidence. Specifically, the prosecutor intentionally did not inform the defendant about a plea agreement that it reached with its chief witness, who had actually lied on the witness stand when he denied that the Commonwealth had promised him favorable treatment in return for his testimony. Furthermore, the district attorney deliberately withheld physical evidence that he knew was exculpatory to the defendant because it supported the defendant's theory of the case. Indeed, when a police officer testified about the existence of the evidence, the prosecutor presented testimony from other police witnesses suggesting that the first officer was fabricating his testimony.

The Pennsylvania Supreme Court in **Smith** characterized the action of the district attorney as egregious and clearly undertaken in bad faith. It discharged the defendant and ruled that "the double jeopardy clause bars retrial following intentional prosecutorial misconduct designed to secure a conviction through the concealment of exculpatory evidence" as well as when a prosecutor intentionally induces a mistrial in order to secure a second chance at conviction when a trial appears to be headed toward acquittal. **Id.** at 322. It concluded that, when the record demonstrates the presence of "prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant," as opposed to "prosecutorial error," double jeopardy prevents a second trial because there is a "breakdown of the integrity of the judicial proceeding[.]" **Id**. at 324. Under **Smith**, discharge is warranted only when "the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." **Id**. at 325.

In **Wood**, this Court remanded for an evidentiary hearing on the defendant's double jeopardy claim. Therein, the victim of a purse snatching died as the result of injuries suffered during the robbery. The trial court granted a mistrial after the defendant alleged that the Commonwealth had failed to disclose both exculpatory and inculpatory evidence. Specifically, the defendant alleged that the prosecutor withheld witness identifications of other potential assailants, conducted unconstitutional identification procedures of Wood, and did not inform him of a witness identification of him as the attacker until that person testified in court. Prior to retrial, the defendant filed a double jeopardy motion, which the trial court denied. As noted, this Court did not resolve the merits of the double jeopardy claim.

In this case, the Commonwealth responds that the prosecutor testified that the playing of the portion of the video that should have been redacted was accidental, and the court credited that testimony. In addition, the Commonwealth contends that trial counsel provided a reasonable basis for not forwarding a double jeopardy challenge. It maintains that counsel testified that he had no basis to conclude the Commonwealth acted intentionally since the strongest part of its case had yet to be presented.

Further, the Commonwealth posits that counsel set forth that such a motion may have inhibited plea negotiations. Thus, it argues that Appellant's claim is meritless.

Prosecutorial misconduct can implicate the double jeopardy clause. Under the federal constitution, the double jeopardy clause prevents a defendant from being retried when a prosecutor deliberately provokes the defendant into moving for a mistrial. **See Oregon v. Kennedy**, 456 U.S. 667 (1982). In the seminal **Smith** decision, our Supreme Court, pursuant to the strictures of the Pennsylvania Constitution, expanded a defendant's double jeopardy protection. **See Commonwealth v. Simone**, 712 A.2d 770, 773 (Pa. Super. 1998).

In **Commonwealth v. Martorano**, 741 A.2d 1221 (Pa. 1999), the Court applied the **Smith** standard and ruled that double jeopardy prevented retrial of the defendants in that case. Therein, the prosecutor engaged in misconduct intentionally undertaken to prejudice defendants to the point of denial of a fair trial. Specifically, during trial, the district attorney was "consistently making references to evidence that the trial court had ruled inadmissible, continually defying the trial court's rulings on objections, and, in a tactic that can only be described as Machiavellian, repeatedly insisting that there was fingerprint evidence linking [defendants] to the crime when the prosecutor knew for a fact that no such evidence existed." **Id**. at 1227. Thus, our Supreme Court concluded that the defendants were entitled to discharge under the precepts of **Smith**.

On the other hand, in **Commonwealth v. Burke**, 781 A.2d 1136 (Pa. 2001), our Supreme Court made it clear that prosecutorial conduct does not warrant a new trial unless its deliberate and egregious and that even gross negligence by the prosecutor does not mandate dismissal of the charges against a defendant. Therein, during the course of the defendant's trial, the Commonwealth learned of evidence in the file of a police detective that was subject to mandatory pretrial discovery. The materials included a statement that the defendant made to police, which was subject to mandatory discovery under the rules of criminal procedure, as well as a statement that the

>Commonwealth's chief witness had given to police that was exculpatory to the defendant, which must also be automatically revealed to a defendant under the due process clause pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963).
>
>By the time the evidence was given to the defendant, the witness in question had testified and was discharged. The trial court noted that the prosecutor, with a minimal amount of effort, could have uncovered the statements and concluded that the problem was created by circumstances under the Commonwealth's control. The trial court dismissed the action. We reversed, and the Supreme Court "granted *allocator* to clarify the duty of prosecutors in securing discovery materials and to examine whether and when dismissal is an appropriate sanction for a discovery violation." **Id**. at 1140.
>
>In that case, the trial court found the Commonwealth to be grossly negligent and lacking in due diligence in failing to uncover the evidence. We concluded that since the district attorney asked police for the evidence and the police claimed the evidence did not exist, the prosecutor's conduct was innocent. The Supreme court ruled that, regardless of whether the prosecutor had exhibited gross negligence, such conduct was insufficient to warrant the remedy of dismissal under **Smith** standard. It reaffirmed that discharge is permitted only when the prosecutor's conduct is deliberately designed to deprive the defendant of a fair trial. **See also Commonwealth v. Kearns**, 70 A.3d 881 (Pa. Super. 2013).
>
>Here, the PCRA court determined that the prosecutor's playing of the tape was accidental. There is support in the record for that position based on the prosecutor's testimony that the PCRA court deemed credible. Since the prosecution's actions herein were not the type of egregious misconduct that occurred in **Smith, supra** or **Martorano, supra**, counsel cannot be ineffective for failing to pursue a double jeopardy motion. Appellant's claim is without merit.

(Doc. 19-3 at 96-101).

The AEDPA requires this Court to presume the correctness of the state court's factual finding that there was no inexcusable neglect by the prosecutor; Petitioner has not rebutted this presumption with clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Miller-El v. Dretke, 545 U.S. at 240 (a district court must "presume the [state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.' "). Petitioner has not shown this finding was based on an unreasonable determination of the facts in light of the evidence presented and he is not entitled to habeas relief under 28 U.S.C. §2254(d)(2).

The Pennsylvania Superior Court did not unreasonably apply Kennedy or other Supreme Court precedent when it affirmed the PCRA court's denial of Petitioner's double jeopardy motion. See 28 U.S.C. §2254(d)(1) and (d)(2); cf. United States v. Williams, 472 F.3d 81, 88 (3d Cir. 2007) ("Because the applicable standard for a double jeopardy bar as a result of prosecutorial misconduct requires a showing that the Government had in fact intended to goad the defendant into requesting a mistrial, and there was no such showing in this case, it was error to dismiss the indictment.") Consequently, trial counsel cannot be ineffective for declining to raise a meritless issue. See

Premo v. Moore, 562 U.S. 115, 124 (2011). Petitioner is not entitled to habeas relief and his petition will be denied.

IV. **Certificate of Appealability**

Pursuant to 28 U.S.C. §2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Jones from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals. See Fed. R. App. P. 22(b)(1).

## V.     Conclusion

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 will be denied.

An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 11, 2022**
16-1351-01